IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JOHN WILLIS HARRIS                                              PLAINTIFF

VS.                                                   CIVIL ACTION NO. 5:16cv65-FKB

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY                                           DEFENDANT

## ORDER

### I. Introduction

John Willis Harris filed for a period of disability, disability insurance benefits, and supplemental security income on December 11, 2013, alleging an onset date of May 16, 2011. His application was denied both initially and upon reconsideration. He requested and was granted a hearing before an ALJ, which was held on March 17, 2016. On April 19, 2016, the ALJ issued a decision finding that Harris was not disabled. The appeals council denied review. Harris now brings this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Having considered the memoranda of the parties and the administrative record, the Court concludes that the decision of the Commissioner should be affirmed.

### II. Facts and Evidence before the ALJ

Harris was born on July 25, 1961, and was 54 years of age at the time of the decision of the ALJ. He has an eleventh grade education and past relevant work experience as a truck driver and as a general clerk. In his applications, he alleged disability due to bulging discs, shoulder surgery, neck surgery, hypertension, cervical

injury, gout, arthritis, acid reflux, borderline diabetes, high cholesterol, right leg pain, and limited use of his right arm and hand.

The medical record indicates that Plaintiff underwent cervical surgery at the age of 25. R. 368, [8] at 372. In May of 2011, he sustained an injury at work; thereafter he experienced neck and right shoulder pain. R. 272, [8] at 276. EMG and nerve conduction studies revealed right C8 radiculopathy. R. 273, [8] at 277. An MRI of the right shoulder indicated degenerative disease in the AC joint. R. 304, [8] at 308. In January of 2012, Dr. Larry Field performed right rotator cuff surgery. R. 224, [8] at 228. By May of 2012, following post-operative physical therapy, his shoulder was doing well; however, he continued to complain of neck and periscapular symptoms, as well as elbow pain. R. 216, [8] at 220. An MRI of the right elbow in June of 2012 was normal, and Dr. Field released him with a six percent impairment rating for his shoulder. R. 288, 215, [8] at 292, 219.

On October 22, 2012, Dr. David Gandy, an orthopedic surgeon, performed an independent medical examination of Plaintiff's neck and right shoulder. Plaintiff had full rotation in his neck to the left and right, with pain on extremes of motion. R. 371, [8] at 375. Sensation in his upper extremities was normal, as was strength. *Id.* Plaintiff had tenderness to palpation of the medial and lateral epicondyles bilaterally, with full range of motion and full strength. *Id.* He had no tenderness and had normal range of motion in his right shoulder. *Id.* Dr. Gandy's assessment was cervical spondylosis without myelopathy, spinal stenosis in the cervical region, sprain and strain of the supraspinatus

muscle, partial tear of the rotator cuff, epicondylitis of the elbow, and benign essential hypertension. *Id.*

Plaintiff sustained a fall in December 2013. A few weeks later he saw Dr. David Smith for his annual physical and complained of right hip pain radiating to his foot, right shoulder pain, and right arm weakness. R. 264, [8] at 268. Dr. Smith's diagnosis was lumbosacral radiculopathy and rotator cuff and shoulder syndrome. R. 266, [8] at 270.

The records do not reveal any further evaluation or treatment until December of 2014, when he underwent a lumbar MRI. The MRI indicated degeneration and a disc bulge at L3-4 causing moderate to severe central spinal stenosis, and mild listhesis and disc bulge at L4-5. R. 295, [8] at 299. In January of 2015, Plaintiff began seeing Dr. Jennifer Gholson for his primary care. At his initial evaluation, he presented using a cane for ambulation and complaining of pain in the right hip, right knee, and right foot, as well as depression. R. 319, [8] at 323. He saw Dr. James Woodall in February of 2015 for complaints of neck pain, right shoulder pain, gait imbalance, and loss of fine motor skills. R. 316-17, [8] at 320-21. Cervical x-ray revealed dynamic instability at C4-5. R. 317, [8] at 321. Dr. Woodall's assessment was cervical spondylosis with myelopathy, lumbar disc degeneration, herniated cervical disc, and cervical disc degeneration. R. 318, [8] at 322. A cervical MRI showed central spinal stenosis.at C4-5 with mild cord flattening, as well as mild foraminal stenosis at T1-T2. R. 290, [8] at 294. On February 27, 2015, Dr. Woodall performed a cervical discectomy with placement of a PEEK interbody device and cervical plate and bone grafting at C4-5. R. 296, [8] at 300. At a follow-up visit on March 12, 2015, Plaintiff was doing well. R. 313,

[8] at 317. Plaintiff reported cramping of his hands at an appointment in June of 2015. R. 327, [8] at 331. There is no further mention of upper extremity symptoms in the medical record. Examination of the cervical spine by Dr. Woodall in August of 2015 revealed good range of motion with some tenderness and palpable spasm. R. 310, [8] at 314. Plaintiff's shoulder was doing well with some muscular pain. *Id.* Dr. Woodall ordered a program of physical therapy. *Id.*

On August 6, 2015, Plaintiff underwent a right total hip replacement. R. 306, [8] at 310. At a follow-up appointment the following October, his surgeon stated that Plaintiff was doing very well overall and that Plaintiff was happy with the right hip. R. 340, [8] at 344.

Plaintiff's medications at the time the hearing were as follows: zolpidem (Ambien), cephalexin (an antibiotic), tizanidine (a muscle relaxer), hydralazine, duloxetine (Cymbalta), omeprazole, hydrocodone/acetaminophen, meloxicam, lisinopril, and amlodipine besylate. R. 210, [8] at 214.

At the hearing, Harris testified as follows: He is unable to work because of neck pain, right shoulder pain, pain in the legs and feet, hip pain, and lower back pain. R. 34, [8] at 38. His worst problems are the pain in his shoulder, neck, hip, and right knee. *Id.* He also suffers from hypertension and depression. R. 34, 41; [8] at 38, 45. Plaintiff estimated that he is in pain about 80 percent of the time. R. 42, [8] at 46. He takes hydrocodone three times a day for his pain. R. 41, [8] at 45. He also uses heating pads to relieve his pain and soaks in a hot tub at least twice a day. R. 43, [8] at 47. In the past, Plaintiff enjoyed hunting and fishing and drove his church's bus, but he can longer

4

participate in these activities.  R. 36, 38; [8] at 40, 42.  Instead, he stays home most of the time, although he is able to drive short distances.  R. 35, 36, 38, 44; [8] at 39, 40, 42, 46.  Plaintiff's household tasks are limited to occasional cooking and laundry and a little gardening in pots.  R. 35-36, [8] at 39-40.  He is unable to perform chores such as sweeping, vacuuming, or mopping because of his shoulder pain and difficulties standing.  R. 36, [8] at 40.  He has difficulty walking without a cane and has lost his balance several times.  R. 39-40, [8] at 43-44.  Plaintiff stated that he could lift 8-10 pounds, stand 10-15 minutes, and climb six stairs.  R. 37, [8] at 41.  He can kneel with pain but would need assistance to get up.  R. 45, [8] at 49.  He cannot stoop down and pick an object off the floor.  *Id.*

Also testifying at the hearing was a vocational expert (V.E.).  The V.E classified Harris's past relevant work as a tractor trailer truck driver and a general clerk.  R. 47-48; [8] at 51-52.  According to the V.E., the truck driver position represents medium, semi-skilled work, while the general clerk job is light and semi-skilled.  *Id.*  The ALJ posed two hypotheticals to the V.E.  In the first, he described the following:  An individual in the same age range and having the same education, work history, and transferrable skills as Plaintiff.  He can lift 20 pounds occasionally and 10 pounds frequently and can walk or stand for four hours in an eight-hour day, 20 minutes at a time.  He can occasionally stoop and climb but can never crouch, kneel, or crawl.  Pushing/pulling is limited to less than ten pounds with the left upper and right lower extremities, and he cannot reach overhead with the left upper extremities.  The V.E. testified that such a person could perform Plaintiff's past job of general clerk.  R. 49, [8] at 53.  In the second hypothetical,

5

the ALJ added the limitations that the individual can lift 10 pounds occasionally, less than 10 pounds frequently, and can walk or stand only two hours in an eight-hour day, for only 15 minutes at a time. In response, the V.E. opined that the individual could perform the sedentary jobs of booth cashier at a self-service gas station and telephone solicitor. *Id.*

### III. The Decision of the ALJ

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] He found that Harris met the insured status requirements for Title II benefits through December 31, 2016. At step two, the ALJ indicated that Harris has the following severe impairments: osteoarthritis, degenerative disc disease, status post right hip replacement, and post discectomy syndrome, R. 17, [8] at 21, and the non-severe impairments of hypertension, right elbow epicondylitis,

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

    (1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

    (2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

    (3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

    (4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

    (5)    whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

right rotator cuff injury, obesity, and depression. R. 19, [8] at 23. At step three, the ALJ found no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20, [8] at 24. The ALJ found that Harris has the residual functional capacity (RFC) to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: He can lift ten pounds frequently and 20 pounds occasionally, can stand/walk for four hours, can sit for six hours a day and only two hours at a time, can occasionally stoop and climb, can never crouch, kneel, or crawl, can push/pull less than ten pounds with the left upper and right lower extremities, and cannot reach overhead with his left upper extremity. R. 20-21, [8] at 24-25. In determining Harris's RFC, the ALJ considered his testimony regarding his pain and limitations but determined that they were not entirely credible. R. 21-23, [8] at 25-27. At step four, the ALJ found that Harris is capable of performing his past relevant work as a general clerk. R. 23, [8] at 27. The ALJ went on to make an alternative step-five finding that, based upon the testimony of the V.E., Harris can perform the alternate sedentary jobs of booth cashier and telephone solicitor. R. 24, [8] at 27. He therefore found that Harris had not been not disabled through the date of the decision. *Id.*

## IV. Analysis

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925

F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2] In his memorandum, Harris argues that the ALJ's determination is not supported by substantial evidence. Specifically, he attacks the ALJ's finding as to Plaintiff's RFC and his determination regarding Plaintiff's credibility.

The ALJ found that the medical record supported a finding that Plaintiff can perform a range of light work. Plaintiff argues that the ALJ erred by relying on the 2012 opinion of Dr. Gandy rather than considering subsequent and more recent medical evidence that, in Plaintiff's words, "show[ed] persistent and worsening pain." [11] at 5. This is a mischaracterization of the medical evidence. The ALJ correctly observed, concerning Plaintiff's neck complaints, that the medical records indicate that Plaintiff did well after his cervical surgery. R. 22, [8] at 26. Likewise, the ALJ pointed out that the medical record indicates that Plaintiff did well after his hip surgery and that he expressed satisfaction with the result. *Id.* The ALJ also relied upon his own observation that although Plaintiff brought a cane to the hearing, he did not rely upon it. *Id.* Finally, the ALJ pointed out that the medical record does not indicate complaints of intense pain following his surgeries. *Id.* The ALJ adequately considered all of the medical evidence of record.

---

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is against the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

Rather, the only evidence in the record of disabling pain is Plaintiff's own testimony at the hearing. Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility by failing to give sufficient reasons for his credibility determination. Assessment of a claimant's credibility requires an ALJ to weigh the objective medical evidence and assign articulated reasons for discrediting the claimant's subjective complaints of pain and limitation. *Falco v. Shalala*, 27 F.3d 150, 163 (5th Cir. 1994). In the present case, the ALJ discussed the medical evidence as indicated *supra*. He also considered Plaintiff's testimony, including the descriptions of his daily activities and his medication. Ultimately, he determined that the record did not support Plaintiff's allegations of intense and disabling pain. The ALJ's opinion shows that he fulfilled his duty to weigh the evidence and give specific reasons for his determination. Furthermore, the ALJ's credibility analysis, along with the objective medical record, provides substantial evidence to support the ALJ's findings as to Plaintiff's pain.

Plaintiff alleges that the ALJ erred by not specifically addressing each of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and SSR 96-7p. The seven factors to which Plaintiff refers are considerations that the Commissioner has determined are relevant to a credibility determination. But the ALJ is not required to specifically discuss each factor in his written decision. *See Giles v. Astrue*, 433 Fed. Appx. 241, 249 (5th Cir. 2011). In the present case, the ALJ discussed several of these factors, including Plaintiff's daily activities, treatment Plaintiff has received, and the measures Plaintiff uses to relieve his pain, and the ALJ gave specific reasons for his

credibility determination.  The opinion shows that he gave adequate consideration to the relevant factors.

In his response to the Commissioner's motion, Plaintiff raises additional issues concerning his allegations of disabling pain.  He contends that the ALJ erred by failing to address the effect of pain as a nonexertional limitation on his ability to work.  He also argues that ALJ erred by preventing his attorney from cross-examining the V.E. on this issue.   As to the former of these arguments, the ALJ was not required to address or discuss a limitation that he did not find to exist, and the Court has already determined that the ALJ's findings as to Plaintiff's pain are supported by substantial evidence.  Thus, this argument is without merit.

Plaintiff's second argument concerns a question his counsel posed to the V.E.  The attorney asked whether the V.E.'s opinion would be impacted if he were to assume the level of pain as described by the claimant.  R. 50, [8] at 54.  The ALJ responded that the question was improper, and he did not allow the V.E. to answer it.  The ALJ did not err. The V.E. was an expert witness, not a fact witness.  The attorney's question was improper because it invited the V.E. to make his own factual findings as to Plaintiff's functional limitations.  The *Hearings, Appeals and Litigation Law Manual* of the Social Security Administration (HALLEX) supports the ALJ's actions in this case:

> The ALJ will not permit the VE to respond to questions on medical matters or to draw conclusions not within the VE's area of expertise.  For example, the VE may not provide opinions regarding the claimant's residual functional capacity or the resolution of ultimate issues of fact or law.

HALLEX I-2-6-74 (S.S.A.), 1993 WL 751902.

One other point deserves mention.  Attached to Plaintiff's response is a Notice of Award to Plaintiff dated January 4, 2017.  The notice states that Plaintiff is entitled to monthly disability benefits beginning October of 2016.  Thus, it appears that subsequent to the application currently under review, Plaintiff applied for benefits and was determined to be disabled for a later period.  Plaintiff states that this award of benefits should raise doubts about the Commissioner's denial herein.  The Court disagrees.  It is certainly possible that more recent medical records would have provided additional evidence to support Plaintiff's allegations.  It is also possible that Plaintiff's condition progressed.  And advancing age would have made it easier, under the regulations, for Plaintiff to establish disability.  The present case must stand or fall on its own merits.

The evidence before the ALJ established that during the relevant time period, Plaintiff had a number of severe impairments and that those impairments resulted in functional limitations.  In reaching his decision as to Plaintiff's RFC, the ALJ properly accounted for limitations in Plaintiff's ability to stand and walk, his limitations in his extremities, and his postural limitations. However, it was within the province of the ALJ to find that Plaintiff's subjective allegations of pain were not entirely credible, given the medical record.  "Subjective evidence need not take precedence over objective evidence."  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1991).  In the end, this is a case in which the ALJ found the medical evidence to be more persuasive than the claimant's testimony.  As the Fifth Circuit stated in just such a case, "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

## V. Conclusion

For these reasons, the Court concludes that the decision of the Commissioner is supported by substantial evidence and that no reversible errors of law were made. Accordingly, the decision is affirmed. A separate judgment will be entered.

So ordered, this the 7th day of August, 2017.

<u>s/ F. Keith Ball</u><br>
United States Magistrate Judge